**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Case No. 14-cv-00122-RM-KLM

JERALD A. BOVINO,

      Plaintiff,

v.

LEVENGER COMPANY,

      Defendant.

---

**OPINION AND ORDER**

---

Pending before the Court is defendant Levenger Company's ("defendant") Motion for Attorneys' Fees ("the motion"), pursuant to 35 U.S.C. § 285 ("§ 285"). (ECF No. 79.) Plaintiff Jerald Bovino ("plaintiff") has filed a response to the motion, and defendant has filed a reply. (ECF Nos. 85, 89.) Both parties have also filed supplemental authorities in support of their respective positions (*see* ECF Nos. 92, 94), and defendant filed a response to plaintiff's notice of supplemental authorities (ECF No. 95).

**I.     Procedural Background**

This case began on January 16, 2014, with the filing of plaintiff's Complaint, raising, in one cause of action, claims against defendant for direct patent infringement, willful patent infringement, contributory patent infringement, and induced patent infringement all related to U.S. Patent No. 6,977,809 ("the '809 Patent"). (ECF No. 1 at ¶¶ 6, 11-20.) Plaintiff alleged that defendant's

"use, sale, offering for sale and/or manufacturing" of portable computer cases infringed the '809

Patent. (*Id*. at ¶ 8.) The Complaint alleged that the abstract for the '809 Patent stated the following:

> The present invention is directed to a portable computer having an integral case that incorporates a resilient material to protect the portable computer from wear and tear encountered when transporting and/or using the portable computer. The integral case also includes a retractable strap means that can be utilized to facilitate the transporting of the portable computer. The integral case for the portable computer also includes an identification pocket on the exterior surface of the integral case for incorporating identification documents for the portable computer.

*Id*. at 2 n.1.

On May 2, 2014, defendant filed an Amended Answer and Counterclaims to the Complaint.

(ECF No. 33.)  Among other things, defendant alleged that the '809 Patent does not cover portable

computer cases; instead, it covers personal computers with an integrated case, and that defendant

"does not make, use, offer to sell, or sell portable computers."  (*Id*. at 7-8.)

On April 29, 2014, defendant filed a Motion to Dismiss Indirect and Willful Infringement.

(ECF No. 27.)  Plaintiff responded to the motion, and plaintiff filed a reply.  (ECF Nos. 35, 37.)  On

March 9, 2015, the Court granted the motion to dismiss in part and denied it in part.  (ECF No. 55.)

The Court dismissed plaintiff's claims for induced patent infringement for any acts occurring prior

to the filing of the Complaint and for willful infringement.  (*Id*. at 9.)  The Court denied the motion

to dismiss with respect to plaintiff's claims for induced patent infringement for acts occurring after

the filing of the Complaint and for contributory patent infringement.  (*Id*. at 9-10.)

While the motion to dismiss was pending, defendant served plaintiff with its Initial Invalidity

Contentions on October 9, 2014. (ECF No. 89-2.)[1]  Therein, defendant informed plaintiff of six prior

---

[1] As discussed in more detail *infra*, while defendant's Initial Invalidity Contentions are dated (next to the signature box) as of October 9, 2013 (ECF No. 89-2 at 5), the certificate of service is dated October 9, 2014 (*id*. at 6).  Given that this case had not begun as of October 9, 201**3**, the Court considers

art patents that allegedly invalidated all of the claims related to the '809 Patent. (*Id*. at 3-4.) The six prior art patents were the following: U.S. Patent No. 6,101,086 ("the Kim Patent"); U.S. Patent No. 6,426,870 ("the Oross Patent"); U.S. Patent No. 6,179,122 ("the Moncrief Patent"); U.S. Patent No. 6,052,279; U.S. Patent No. 5,835,344 ("the Alexander Patent"); and U.S. Patent No. 6,229,697 ("the Selker Patent"). (*Id*. at 4.) Plaintiff served a response to defendant's initial invalidity contentions on October 30, 2014, distinguishing the prior art patents. (ECF No. 89-3.)

In December 2014 and January 2015, the parties filed Claim Construction Briefs, and defendant then filed a response to plaintiff's Claim Construction Brief. (ECF Nos. 49-51.) In plaintiff's Claim Construction Brief, he asserted that he had been "granted a patent on a combined portable computer and case integrally affixed thereto." (ECF No. 50 at 14.)

Prior to the holding of a claim construction hearing, on April 21, 2015, plaintiff filed a Motion for Voluntary Dismissal of Claim for Direct Infringement ("the first motion for voluntary dismissal"). (ECF No. 59.) Although plaintiff indicated that the first motion for voluntary dismissal was unopposed (*id*. at 1), defendant filed a response thereto, asserting that defendant had not conferred, pursuant to the Local Rules for the U.S. District Court for the District of Colorado, with opposing counsel prior to filing the first motion for voluntary dismissal. (ECF No. 60 at 1-2). Defendant further argued that plaintiff's remaining claims for indirect patent infringement should also be dismissed as they were baseless, and informed that it intended to file a motion for attorneys' fees and costs. (*Id*. at 4-5.) Plaintiff then filed a reply. (ECF No. 63.)

A little over two months after the filing of the first motion for voluntary dismissal, plaintiff moved to voluntarily dismiss his remaining indirect patent infringement claims, and for the parties

the first/signature date to be a typographical error in that it is meant to say October 9, 201**4**.

3

to bear their own fees and costs ("the second motion for voluntary dismissal").  (ECF No. 66.)  Plaintiff asserted that, in light of an unfavorable ruling in a different case pending in this District ("the Amazon case"), and the disclosure of new prior art references in that case, he no longer wished to continue this action against defendant.  (*Id*. at 3.)  Defendant then responded to the second motion for voluntary dismissal.  (ECF No. 68.)

On July 8, 2015, the Court granted the first motion for voluntary dismissal, and granted in part and denied in part the second motion for voluntary dismissal.  (ECF No. 69.)  With respect to the second motion for voluntary dismissal, the Court granted it to the extent that plaintiff's remaining claims for indirect patent infringement were dismissed, but plaintiff's request for the parties to bear their own attorneys' fees and costs was denied.  (*Id*. at 4.)   Shortly thereafter, the Court also dismissed defendant's counterclaims without prejudice.  (ECF No. 78.)

On July 30, 2015, defendant filed the instant motion for attorneys' fees.  (ECF No. 79.)  Defendant asserted four principal grounds justifying an award of attorneys' fees: (1) plaintiff's direct patent infringement claim was contradicted by plaintiff's own claim construction brief; (2) plaintiff argued an objectively meritless construction of the term "resilient ribs"; (3) a settlement agreement in a different case before this District ("the Apple case") barred plaintiff's claims against defendant; and (4) plaintiff litigated this case in an unreasonable manner.  (*Id*. at 2-3, 6-15.)  Plaintiff responded to the motion, arguing that this was not an exceptional case justifying the award of attorneys' fees because he reasonably chose to end this case after 91 new prior art references were disclosed in the Amazon case, six of which "would likely invalidate" the '809 Patent.  (ECF No. 85 at 5-6.)  Plaintiff asserted that the 91 prior art references had been newly disclosed on May 18, 2015.  (*Id*. at 5.)  Plaintiff further argued that he chose to end this case because of an adverse claim construction in the

Amazon case, and the outcome of another case in the Northern District of California ("the Incase action"). (*Id*. at 6.) Defendant filed a reply, arguing that plaintiff had been aware of "many" of the 91 prior art references for two years, and, in alleging that the prior art references were new, plaintiff had violated his duty of candor to this Court. (ECF No. 89 at 2-6.)

## II.     Legal Standard

Section 285 provides that a court "in exceptional cases may award attorney fees to the prevailing party."[2] 35 U.S.C. § 285. In 2014, the U.S. Supreme Court re-positioned the deckchairs for determining whether a case is exceptional under § 285. Doing away with a standard requiring a movant to show some material inappropriate conduct, or objectively baseless litigation that is brought in subjective bad faith, the Supreme Court held that a case is "exceptional" when it "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. ___, 134 S.Ct. 1749, 1756 (2014). This determination is made on a case-by-case basis with the totality of the circumstances considered. *Id*. A nonexclusive list of factors to consider includes: "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. at 1756 n.6 (quotation omitted). The burden of establishing an exceptional case is on the movant by a preponderance of the evidence. *Id*. at 1758.

---

[2] There is no dispute in this case that defendant is a prevailing party. Therefore, in light of the dismissal with prejudice of all claims in this case, the Court finds that defendant is a prevailing party, and does not further discuss this matter.

### III.    Discussion

As mentioned *supra*, in the motion, defendant argues that this case is exceptional for four principal reasons; three of which involve the alleged unreasonableness of plaintiff's litigating positions, and the last which involves the totality of plaintiff's alleged misconduct in litigating this case.  In its reply, defendant raises a fifth basis for awarding fees: misconduct related to statements made in plaintiff's response to the motion.  The Court will address the three arguments related to plaintiff's litigating positions, and then the two arguments related to plaintiff's conduct.

### A.    Substantive Strength of Plaintiff's Litigating Positions

### 1.    Claims for Induced and Contributory Patent Infringement

Defendant relies on findings in two other cases involving plaintiff to support its argument that plaintiff's claim constructions and infringement claims were unreasonable, and this entire case was barred.  In the Incase action, the district court found that plaintiff's claims for induced and contributory infringement were barred by a settlement agreement plaintiff had entered into a few months before plaintiff filed the lawsuit in that case.  (ECF No. 61 at 5.)  The district court's order in that case has been filed here under a restricted level, so this Court will not delve into its reasoning in any greater detail, however, in short, if this Court agreed with the findings in that case, then plaintiff's claims here for induced and contributory patent infringement would also be barred.  In the Amazon case, the district court granted summary judgment to the defendant, agreeing with the defendant's construction of the term "resilient ribs," and finding that plaintiff had failed to produce sufficient evidence to support his contributory infringement claim in light of that construction. *Bovino v. Amazon.com, Inc.*, 2015 WL 3523218, at *3-5, 9-11 (D. Colo. Jun. 1, 2015) ("*Amazon I*").

The Court places no weight on the summary-judgment findings in these cases in determining whether this case is exceptional. Notably, defendant fails to acknowledge that in both cases the district courts were subsequently presented with motions for attorneys' fees, and ruled against awarding such fees under § 285. In the Incase action, the district court succinctly denied the attorneys' fees motion, finding that the meaning of the settlement agreement was "not so obvious as to warrant a conclusion that Bovino's position on it was unreasonable." (ECF No. 86-1.) Given that issues regarding the settlement agreement have not been briefed in a proper fashion in this case, this Court is not going to second-guess the findings of the district court in the Incase action as to the reasonableness, or lack thereof, of plaintiff's argument that the agreement did not bar his claims for induced and/or contributory patent infringement. *See Trover Group, Inc. v. Dedicated Micros USA*, 2015 WL 4910875, at *3 (E.D. Tex. Aug. 17, 2015) ("for a case dismissed before trial to be designated exceptional, evidence of the frivolity of the claims must be reasonably clear without requiring a 'mini-trial' on the merits for attorneys' fees purposes.") (quotation omitted).

In the Amazon case, the district court also denied a motion for attorneys' fees, finding, with respect to plaintiff's claim constructions, that they were not "so unreasonable as to put this action in the 'exceptional' category. *Bovino v. Amazon.com, Inc.*, 2016 WL 943780, at *3 (Mar. 14, 2016) ("*Amazon II*"). Again, given that this case never reached a claim construction hearing, this Court is not going to second-guess the finding in *Amazon II* that plaintiff's claim constructions were so unreasonable as to warrant the imposition of attorneys' fees. As a result, the Court does not find that plaintiff's claims for induced and contributory copyright infringement—the claims at issue in the Incase order and *Amazon I*—were so substantively weak as to make the bringing of those claims or their continued litigation "exceptional" under § 285.

7

## 2.    Claim for Direct Patent Infringement

That, however, is not the case for plaintiff's claim of direct patent infringement.  This claim was baseless and factually unsupported from the beginning of this case.  Notably, in the Complaint, plaintiff alleged that the '809 Patent was "directed to a portable computer having an integral case." (ECF No. 1 at 2 n.1.)  At the same time, plaintiff alleged that defendant had infringed his patent by selling or manufacturing only portable computer cases.  (*Id.* at ¶ 8.)  In other words, although plaintiff's patent was directed toward a computer *and* an integral case, defendant only manufactured cases.  As the district court in *Amazon I* found, although such an argument may lend itself to a claim for *contributory* patent infringement, *see Amazon I*, 2015 WL 3523219, at *8, it cannot support a claim that defendant committed direct patent infringement because defendant's alleged infringing products do not include a computer, *see id.* at *8-9.  Only through a consumer's use of defendant's products *with* a computer could the *combined* product arguably be infringing, and then only on a contributory basis.  *See id.*  In addition, although the Complaint does not explicitly state that defendant's did not manufacture or sell personal computers, it does not state that defendant did, and the fact that plaintiff only alleged that defendant's sold personal computer *cases* indicates strongly that plaintiff was more than fully aware that its patent did not cover defendant's products for purposes of direct patent infringement.

To the extent that plaintiff was not aware of this prior to filing the Complaint, defendant's Counterclaim made it more than apparent in asserting that the '809 Patent did not cover cases alone, and defendant did not manufacture or sell portable computers.  (*See* ECF No. 33 at 7-8.)  Moreover, plaintiff dispelled any notion that his construction of the '809 Patent in the Complaint was a mistake when he reiterated the construction, that the patent required *both* a computer and an integral case,

in his Claim Construction Brief. (*See* ECF No. 50 at 14 ("Plaintiff Bovino has invented and been granted a patent on a combined portable computer and case integrally affixed thereto.")). Despite this, plaintiff continued to insist that defendant infringed the '809 Patent due to its manufacture or sale of just portable computer cases. (*Id*. at 2.)

For a reason as yet unexplained, plaintiff eventually moved to voluntarily dismiss his direct patent infringement claim on April 21, 2015; nearly a year after the filing of the Counterclaim on May 2, 2014. (ECF No. 33.) In light of plaintiff's own construction of the '809 Patent from the outset of this case, and the known fact that defendant did not manufacture or sell a product that was covered by that construction, the Court is at a loss to explain why plaintiff chose to initiate and then continue litigating his direct patent infringement claim. In the words of *Octane Fitness*, given the facts and patent present here, litigation of the direct patent infringement claim makes this case "stand[] out" from others. *See Octane Fitness*, 134 S.Ct. at 1756.

In response to the motion, plaintiff briefly addresses his direct patent infringement claim. However, instead of explaining why the claim was brought in the first place, or why plaintiff chose to dismiss it, plaintiff spends his time attacking defendant for not moving to dismiss the claim earlier. (*See* ECF No. 85 at 7-8.) Specifically, plaintiff asserts that defendant does not identify any actions that it took solely directed to the direct infringement claim, and that defendant took no action to confer early in the litigation about dismissing the claim. (*Id*.) Plaintiff also appears to suggest that, if the parties had conferred, he may have sought to dismiss the direct infringement claim depending on the information obtained during the conferral. (*See id*. at 8.) These arguments are misplaced. First, as discussed *supra*, plaintiff was more than aware of the fact, when the Complaint was filed, that defendant only manufactured or sold portable computer cases, while the '809 Patent

covered a *combined* portable computer and integral case. (*See* ECF No. 1 at 2 n.1, ¶ 8.) Thus, a conferral was not necessary for plaintiff to obtain information needed to dismiss the direct patent infringement claim; he was in possession of that information already.[3]  Moreover, to the extent plaintiff's knowledge of defendant's manufacturing or sale habits was shaky, those habits were made abundantly clear in defendant's Counterclaim—filed less than four months after the initiation of this case, and nearly a year before plaintiff moved to dismiss the direct patent infringement claim.

Second, plaintiff misplaces the responsibility for ensuring that baseless claims are not filed in the first place.  Although conduct need not be sanctionable for it to be exceptional under § 285, *see Octane Fitness*, 134 S.Ct. at 1756-57, the Court takes guidance from Fed.R.Civ.P. 11 ("Rule 11") in this regard.  Notably, Rule 11 provides that, by presenting a pleading, an attorney certifies to the best of his or her knowledge, after an inquiry reasonable under the circumstances, that the claims are warranted by existing law and the factual contentions have evidentiary support.  Fed.R.Civ.P. 11(b)(2), (3).  Here, existing law did not justify a claim of direct patent infringement against defendant.  Direct patent infringement occurs when a person or entity makes, uses, or sells "any patented invention."  35 U.S.C. § 271(a).  Plaintiff's patented invention was a *combined* personal computer and integral case. (ECF No. 1 at 2 n.1; ECF No. 50 at 14.)  Defendant, though, only manufactured or sold personal computer cases. (ECF No. 1 at ¶ 8.)  Thus, it was clear from a simple review of plaintiff's own allegations in the Complaint that a claim for direct patent

---

[3] In that regard, the '809 Patent was issued on December 20, 2005. (ECF No. 1 at ¶ 6; ECF No. 1-1.)  A copy of the patent was attached as an exhibit to the Complaint. (ECF No. 1-1.)  Therein, the claims of the patent were addressed to "[a] portable computer comprising [ ] an openable case…." (*Id.* at 4.)  Thus, again, when he filed the Complaint, plaintiff was more than aware of the fact that, in order for a party to directly infringe the '809 Patent, it was required that the party make, use, or sell a portable computer.

infringement was not warranted under § 271(a).[4]  The fact that defendant could have moved to dismiss this claim, but failed to do so, does not absolve plaintiff of his responsibility for having brought the claim in the first place; rather, that goes more to the amount of fees that may be awarded to defendant.

### B.   Plaintiff's Litigation Conduct

### 1.   Prior to the Filing of the Motion for Attorneys' Fees

In the motion, defendant argues that the totality of plaintiff's litigation conduct was unreasonable.  (ECF No. 79 at 13-15.)  Plaintiff points to the following specific conduct: (1) after claim construction briefing, plaintiff filed a "Reissue Patent Application[,] seeking to exclude the computer limitation of the '809 [P]atent"; (2) plaintiff served noncompliant infringement contentions that failed to identify any products that allegedly infringed the '809 Patent; and (3) plaintiff filed multiple other lawsuits that were baseless.  With respect to the latter matter, the district courts in those other cases did not find plaintiff's conduct to be sufficiently exceptional to justify an award of attorneys' fees under § 285.  *See Amazon II*, 2016 WL 943780, at *2-3; ECF No. 86-1.  Given that those courts were far more aware of plaintiff's *conduct* in litigating those cases, the Court will not revisit the findings they reached.  As such, the Court does not consider plaintiff having filed multiple other lawsuits as a reason for finding his conduct in this case to be unreasonable.

As to the first matter, in the context of this case, seeking a revised patent, so that the patented invention will no longer include a portable computer (*see* ECF No. 79-9 at 17), could be considered

---

[4] As a result, the Court does not consider this case to be "analogous" to *Computer Software Prot., LLC v. Adobe Sys. Inc.*, 2015 WL 1517402 (D. Del. Mar. 31, 2015), where the court explained that "none of the defenses posited by defendants are so evident from the record at bar that the court can say with any certainty that defendants not only would have succeeded on the merits, but that the strength of their arguments would have been exceptionally dispositive."  *Id.* at *2.

unreasonable with respect to the direct patent infringement claim, given that plaintiff would have been more than aware of the claims recited in the '809 Patent when that patent was issued, and that those claims were incompatible with defendant having directly infringed the patent. Ultimately, though, the Court considers this more relevant to the frivolous nature of plaintiff's litigation position, rather than the manner in which plaintiff litigated this case.[5]

The Court places little weight on the second matter. Defendant claims that plaintiff's initial and first amended infringement contentions violated D.C.Colo. L.Pt.R. 4 & 5. (ECF No. 79 at 13-14.) With respect to the initial infringement contentions, the exhibit purportedly containing that document does not, in fact, contain it. (*See* ECF No. 79-10.) In any event, even if plaintiff's first amended infringement contentions omit or misstate certain information, and, in doing so, may arguably violate a local patent rule, such conduct does not make this case "stand[] out" from the general body of cases where similar conduct occurs far too frequently. Such conduct, in the moment, may result in discipline in the form of, for example, pleadings being stricken, but that does not mean

---

[5] To the extent that a court may disagree with the finding herein with respect to the frivolity of plaintiff's direct patent infringement claim, this Court would consider the manner of plaintiff's conduct in litigating the direct infringement claim to be unreasonable. Apart from the allegations in the Complaint showing that the claim was baseless, plaintiff was subsequently informed, via the Counterclaim, of the frivolous nature of the claim. In addition, plaintiff's continued construction of the '809 Patent in his infringement contentions, response to defendant's invalidity contentions, and claim construction brief demonstrated the facial implausibility of the direct patent infringement claim. Continuing to litigate this claim in the face of plaintiff's own and defendant's allegations certainly sets it apart from other cases for purposes of *Octane Fitness* and § 285. Thus, the Court would find this case to be exceptional on that basis independent of its finding that plaintiff's litigation position regarding the direct patent infringement claim was baseless. This is even more so when combined with the matter discussed in Section III.B.2. *infra*.

the same makes this case exceptional.[6]  The same is true of plaintiff's alleged failure to file a required notice of related cases.  (*See* ECF No. 79 at 3.)

### 2.    After the Filing of the Motion for Attorneys' Fees

In his response to the motion, plaintiff argues that this case is not exceptional because on May 18, 2015, he learned of 91 new prior art references ("the New Prior Art References") that were disclosed in the Amazon case, and potentially rendered the '809 Patent invalid.  (ECF No. 85 at 5-6.) Plaintiff asserts that, after reviewing the New Prior Art References, plaintiff concluded that the '809 Patent would "likely" be invalidated.  (*Id*. at 6.)  Plaintiff contends that he "acted prudently" in dismissing this case in light of, *inter alia*, the disclosure of the New Prior Art References.  Plaintiff further contends that neither defendant nor the U.S. Patent and Trademark Office found the New Prior Art References.  (*Id*.; ECF No. 86-4 at ¶ 8.)

In reply, defendant argues that plaintiff had been made aware of "many" of the New Prior Art References "two years" before May 18, 2015.  (ECF No. 89 at 1.)  Defendant asserts that, as a result, plaintiff's contention that the New Prior Art References were "new" is, at best, a complete disregard

---

[6] Although the section of the motion discussing plaintiff's alleged unreasonable conduct does not mention the issue, earlier in the motion defendant argues that plaintiff withheld the settlement agreement from the Apple case.  (ECF No. 79 at 3.)  Related to this is plaintiff's alleged refusal to negotiate, in good faith, a protective order with respect to the settlement agreement.  (*Id*.)  Simply put, the Court has not been presented with sufficient evidence to suggest that plaintiff improperly withheld the settlement agreement or refused to negotiate in good faith.  In that regard, plaintiff contends that he did negotiate in good faith in that he provided a proposed protective order that would have resulted in disclosure, but defendant "rebuffed" this proposal.  (*See* ECF No. 85 at 15-16, 18.)  Defendant's averments in support of this allegation, though, are threadbare, alleging only that plaintiff waited 15 months before disclosing the settlement agreement.  (*See* ECF No. 79 at 11-12.)  In its reply, defendant adds a little more detail, alleging that his counsel "learned" from counsel in the Incase action that "acquiring the settlement agreement would not be easy."  (*See* ECF No. 89 at 9.)  Notably missing, though, is any contention that defendant attempted to acquire the settlement agreement after speaking with counsel in the Incase action.  (*See id*.)  Merely because counsel learned something from another case did not mean that counsel could give up all hope of obtaining the settlement agreement here.  Thus, at best, the fault for the delayed disclosure of the settlement agreement is 50-50.

of plaintiff's duty of candor.  (*Id*. at 1-2.)  The Court agrees with defendant that plaintiff's affirmative representation that the New Prior Art References were newly disclosed on May 18, 2015 is not true, at least with respect to a limited number of those references.  Before explaining why that is the case, the Court is obliged to address defendant's own statements.  First, defendant's contention that "many" of the New Prior Art References were known to plaintiff prior to May 18, 2015 is a severe exaggeration of the word "many," which means "a large number."  *See* New Oxford American Dictionary 1067 (3d ed. 2010).  In its reply, defendant points to seven separate examples of prior art that defendant contends plaintiff was aware before May 18, 2015.  (*See* ECF No. 89 at 4.)  Seven is not a large number in relation to ninety-one.

Putting that verbal exuberance down to "zealous" advocacy, the Court cannot do the same for the next, which involves specific factual statements that are not accurate.  In the reply, defendant provides a timeline of when plaintiff was made aware of the seven examples of prior art referenced *supra*.  Defendant asserts that plaintiff first became aware of five of these pieces of prior art on October 9, 2013, when it served its initial invalidity contentions on plaintiff, citing Exhibit B to the reply.  (ECF No. 89 at 4.)  That may seem an odd date given that it is *before* this case began.  In any event, defendant's initial invalidity contentions were served on October 9, 201**4**, not 2013.  (ECF No. 89-2 at 7.)  Although, for some reason, the date next to the signature block is October 9, 2013 (*id*. at 6), the Court can only assume that is a typographical error; not least because *this case* had not even begun before that date.  Not seeing the error of its ways, defendant continues with its timeline, asserting that plaintiff served his response to the initial invalidity contentions on October 30, 2013, citing Exhibit C to the reply.  (ECF No. 89 at 4.)  Again, Exhibit C does not help defendant, as it clearly stated that the response to the initial invalidity contentions was served on October 30, 2014,

and, this time, not even the signature block can save defendant as the date next to that was also October 30, 2014.  (ECF No. 89-3 at 7-8.)

The problem with these inaccuracies is not so much that defendant failed to read the exhibits to which it was citing, or that it failed to apply common sense in that this case had not begun when it believed that its initial invalidity contentions were served, the problem is rather that defendant's failings in this regard color its argument about the amount of time plaintiff was aware of the New Prior Art References.  Specifically, the reply is replete with assertions about how long plaintiff was aware of the seven pieces of prior art mentioned *supra*.  For example, defendant alleges that plaintiff had been aware of the prior art "for two years," and that they had been served on defendant "two years ago."  (ECF No. 89 at 1, 3.)  Proving that this was no mistake, defendant repeated it in its notice of supplemental authority, asserting that prior art had been repeatedly disclosed to plaintiff "over a two year period."  (ECF No. 95 at 2.)  In reality, taking defendant's initial invalidity contentions as the starting point, the period during which plaintiff would have been aware of the five pieces of prior art identified therein would have been a little over seven months.  Ultimately, the Court, is not prepared to find plaintiff's unsupported statements, about when defendant first became aware of some of the New Prior Art References, to be sanctionable.  However, it is a fine example of when people in glass houses are throwing stones wrapped in accusations of misconduct or misrepresentations they should be especially careful that their own conduct and representations are of the highest exemplar lest their glass house shatter around them.

Turning to plaintiff, the exhibits that defendant provided in support of his reply, clearly indicate that at least seven of the New Prior Art References were made aware to him prior to May 18, 2015.  As defendant asserts, five of the New Prior Art References were brought to plaintiff's

15

attention in defendant's initial invalidity contentions. (*See* ECF No. 89 at 4.) The Court has reviewed the initial invalidity contentions, and as discussed in the Procedural Background section *supra*, plaintiff was informed of five pieces of prior art that allegedly invalidated all of the claims related to the '809 Patent; specifically, the Kim Patent, the Oross Patent, the Moncrief Patent, the Alexander Patent, and the Selker Patent. (ECF No. 89-2 at 5.) The Court has also reviewed the letter that plaintiff alleges was sent to him on May 18, 2015, containing the New Prior Art References, and each of the patents referenced in the preceding sentence appear in that letter. (*See* ECF No. 86-3 at 2 (the Kim and Alexander Patents), 3 (the Moncrief Patent), 4 (the Oross and Selker Patents). In addition, on October 10, 2014, in a motion for summary judgment filed in the Amazon case, two further pieces of prior art were identified to plaintiff: U.S. Patent No. 6,262,886 ("the DiFonzo Patent"), and U.S. Patent No. 6,646,864 ("the Richardson Patent"). (ECF No. 89-4 at 9-10.) Both of these patents were identified in the letter. (*See* ECF No. 86-3 at 2 (the Richardson Patent), 3 (the DiFonzo Patent)).

Based on the above, the Court cannot help but find that plaintiff's contention that each of the New Prior Art References were newly disclosed to him on May 18, 2015 to be a misstatement. Moreover, in light of the above, defendant clearly found and disclosed to plaintiff some of the New Prior Art References. As such, plaintiff's assertion to the contrary is incorrect. (*See* ECF No. 85 at 6.)[7] Adding insult to injury, plaintiff also asserts that the New Prior Art References were not "uncovered by the [U.S.] Patent and Trademark Office during the prosecution of the '809 Patent."[8]

---

[7] For the same reason, the Court does not credit the declaration of Ralph Martin. (*See* ECF No. 85 at 6; ECF No. 86-6.)

[8] To the extent that plaintiff's assertion in the response, regarding which of the New Prior Art References were not uncovered by the U.S. Patent and Trademark Office, is ambiguous (arguably the assertion could be read as referring solely to the six prior art references that plaintiff concluded invalidated

(*Id.*)  This, again, is not correct because the DiFonzo Patent played a central role in the prosecution of the '809 Patent.  *Plaintiff* himself acknowledges this fact in his Claim Construction Brief: "During prosecution of the '809 Patent, Bovino made a narrowing amendment to the pending claims which added the term 'resilient ribs.'  This amendment was made to overcome a very close prior art reference that also teaches a computer with an integrated case with a rubber covering, U.S. Patent No. 6,262,886 to DiFonzo et al."  (ECF No. 49 at 3-4.)  This alone makes plaintiff's assertion in the response to the contrary particularly egregious.  Put another way, the Court is not penalizing plaintiff for making assertions based upon facts that he may have been unsure or possessed insufficient information, instead, it is clear that plaintiff made factual assertions in his response that plaintiff, if he had read the letter containing the New Prior Art References, knew were wrong.  All amounts of zealous advocacy in the world cannot excuse that conduct.

As a result, the factual assertions highlighted *supra* regarding the New Prior Art References are almost certainly sanctionable under Rule 11.  *See* Fed.R.Civ.P. 11(b)(3).  Nonetheless, a finding that the assertion of claims or factual contentions is sanctionable under Rule 11 is not necessary for purposes of § 285, *see Octane Fitness*, 134 S.Ct. at 1756-57, and thus, the Court does not make an explicit sanctions findings herein or order plaintiff to show cause why such a finding should not be made.  That being said, the Court does include the incorrect factual assertions with respect to the New Prior Art References as a factor in finding this case to be exceptional and in awarding attorneys' fees to defendant.

---

his patent), plaintiff's declaration in support of the assertion clarifies any doubt.  Notably, in his declaration, plaintiff asserts that: "My counsel received 91 new prior art references in [the Amazon case] that had not been disclosed previously in the Amazon [Case] or in this litigation.  Notably, *they also were not found by the United States Patent and Trademark Office in the prosecution of my patent.*") (ECF No. 86-4 at ¶ 8) (emphasis added).

## C.    The Damages Award

In the motion, defendant does not set forth the amount of attorneys' fees that it seeks in this case, noting instead that it will do so in the event that this Court finds this case to be exceptional. (ECF No. 79 at 3 n.2.)  Now that the Court has found this case to be exceptional, it provides the following deadlines with respect to submitting argument and evidence in support of and opposition to the amount of defendant's attorneys' fees: defendant shall have twenty-one (21) days from entry of this Opinion to file its evidence and any argument in support of its request for attorneys' fees; plaintiff shall then have fourteen (14) days to file any evidence or arguments opposing the *amount* (not the fact) of attorneys' fees requested.  No reply or sur-reply will be allowed, and no evidence filed outside the above deadlines will be considered.  In addition, no extensions to the above deadlines will be allowed under any circumstances.

To assist the parties, particularly defendant, in the presentation of any evidence and arguments that they may file, the Court makes the following observations.  First, the Court intends to apply the lodestar method, along with any factors not adequately taken account of by the lodestar, in calculating reasonable attorneys' fees in this case.  *Lumen View Tech. v. Findthebest.com, Inc.*, 811 F.3d 479, 483 (Fed. Cir. 2016).  Second, the Court has not found plaintiff's litigating of claims for induced and contributory patent infringement to have been unreasonable; the only claim frivolously filed was that for direct patent infringement.  *See* Section III.A. *supra*.  As such, the Court does not believe that awarding attorneys' fees incurred solely in connection with plaintiff's claims for indirect patent infringement to be justified.[9]  Third, the Court forewarns counsel for defendant

---

[9] To the extent that defendant is unable to delineate the claims for which services were incurred, the Court anticipates following a route similar to the one taken in *Brilliant Optical Solutions, LLC v. Comcast Corp.*, 2015 WL 1476691, at *4-5 (D. Colo. Mar. 27, 2015), in calculating reasonable attorneys' fees.

18

that repetitive and duplicative time entries, or time entries for services not properly billed to counsel's client, will not be considered reasonable for purposes of the lodestar calculation, and thus, they should not be included in the evidence submitted.  In that regard, the Court expects defendant to submit "meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks."  *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1233-34 (10th Cir. 2000).

## IV.    Conclusion

For the reasons set forth herein, the Court GRANTS defendant's Motion for Attorneys' Fees (ECF No. 79).  The parties are ORDERED to file evidence and any argument in support of and opposition to the amount of attorneys' fees as directed herein.

**SO ORDERED.**

DATED this 21st day of April, 2016.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge

19